# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 9269 | **DATE** | 6/10/2004 |
| **CASE TITLE** | IFC CREDIT CORP. vs. RE-BOX PACKAGING, INC., ET AL | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
      ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendant IFC and Witowski's motion to dismiss defendant's second amended counterclaim is denied. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JUN 15 2004 date docketed | |
| ✓ | Docketing to mail notices. | | | 35 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| DW | courtroom deputy's initials | | date mailed notice mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IFC CREDIT CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> RE-BOX PACKAGING, INC. as LESSEE, PARTNERS CONCEPTS DEVELOPMENT, INC., as Corporate Guarantor, and RON VAN DEN HEUVEL, as Guarantor <br><br> Defendants and Counter-Plaintiffs, <br><br> v. <br><br> IFC CREDIT CORPORATION and PATRICK WITOWSKI, <br><br> Counter-Defendants. | No. 01 C 9269 <br> Judge James B. Zagel |



## MEMORANDUM OPINION AND ORDER

On October 1, 2000, the parties here entered into a series of lease agreements under which Defendant/Counter-Plaintiff Re-Box Packaging, Inc. ("Re-Box") agreed to lease from Plaintiff/Counter-Defendant IFC Credit Corporation ("IFC") three machines called Measurex MX Open Process Controls Systems (hereinafter the "equipment") used to manufacture paper. IFC had previously leased the equipment to Tenneco at its mill in Filer, Michigan. At the termination of the lease to Tenneco, the equipment was decommissioned and shipped to Process Controls, a company specializing in marketing pulp and paper equipment located in Chardon, Ohio. Re-Box agreed to lease the equipment from IFC and it was shipped from Chardon to Re-Box's plant in De Pere, Wisconsin. At some point, Re-Box ceased making payments to IFC,



whereupon IFC filed suit against Re-Box for breach of the commercial lease agreement. Also named as defendants to the proceedings were Partners Development, Inc. and Ron Van Den Hevel, both of whom guaranteed Re-Box's obligations under the lease agreement. Re-Box filed a second amended counterclaim against IFC and Patrick Witowski, one of IFC's corporate officers and owners.

IFC and Witowski now move to dismiss the second amended counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6). The purpose of a Rule 12(b)(6) motion is to test the sufficiency of the complaint, not the merits of the case. *See Autry v. Northwest Premium Servs.*, 144 F.3d 1037, 1039 (7th Cir. 1998). Dismissal of the counterclaim is appropriate only if it appears beyond a doubt that Re-Box can prove no set of facts in support of its claims that would entitle it to relief. *GATX Leasing Corp. v. Nat'l Union Fire Ins. Co.*, 64 F.3d 1112, 1114 (7th Cir. 1995). In ruling on Rule 12(b)(6) motion, I must accept all well-pleaded factual allegations in the counterclaim as true and draw and all reasonable inferences from those facts in Re-Box's favor. *See Cleveland v. Rotman*, 297 F.3d 569 (7th Cir. 2002).

Contractual Waiver of All Counterclaims

IFC first argues that Re-Box may not pursue any counterclaims against IFC because Re-Box specifically waived its right to do so in Paragraph 17 of the lease agreement. Re-Box responds that its claim of fraudulent inducement in Count I would, if it prevails, render the agreement voidable at the option of Re-Box, thus voiding any waivers, and that its claim under the Illinois Fraud and Deceptive Business Practices Act in Count II is also exempted from any

waiver. Accordingly, before determining whether Re-Box has waived its right to pursue any counterclaims, I must determine whether Count I or Count II should be dismissed.

Count I: Fraudulent Inducement

In Count I, Re-Box has alleged that Witowski made certain statements to Van Den Heuval during the parties' negotiations that Witowski knew were false, that Witowski intended Van Den Heuval and Re-Box to rely upon those statements to induce Re-Box to enter the lease agreement and to sign a Certificate of Acceptance, and that Van Den Heuval and Re-Box relied upon those statements to the detriment of Re-Box. To state a cause of action for fraudulent inducement under Illinois law, Re-Box must plead: (1) a false statement of material fact; (2) knowledge or belief of the falsity by the party making it; (3) an intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statements; and (5) damage to the other party resulting from such reliance. *Neptuno Truehand-Und Verwaltungsgesellschaft MBH v. Arbor*, 692 N.E.2d 812 (Ill. App Ct. 1998). IFC argues that Re-Box has "failed to establish the second element required for fraudulent inducement, that of knowledge or belief" or "that any of Witowski's statements were false," the first element. In support of this argument, IFC points to four non-party depositions and documentary evidence obtained during discovery.

"If matters outside the pleadings are presented by [a movant], a District Court may either exclude those documents and continue under Rule 12 or convert the Rule 12(b)(6) motion into a summary judgment motion and proceed under Rule 56." *Northwestern Corp. v. Y.L.C. Co.*, No. 03 C 2408, 2003 U.S. Dist. LEXIS 17874, at *4 (N.D. Ill. Oct. 7, 2003); *see also Marques v. FRB*, 286 F.3d 1014, 1017 (7th Cir. 2002) (holding that a Rule 12(b)(6) motion was converted

3

into a motion for summary judgment when materials outside the complaint were actually considered by the court). In *Northwestern*, however, because the motion did not comply with Rule 56 or the Local Rules of this Court concerning summary judgment, the Court declined to convert the motion to dismiss into a motion for summary judgment. 2003 U.S. Dist. LEXIS 17874, at *4. I do so here as well, despite Re-Box's assertion that the motion "may be treated as a motion for summary judgment." If IFC desires to move for summary judgment on the counterclaim, then it should do in accordance with the Federal and Local Rules.

In treating IFC's motion as a Rule 12(b)(6) motion to dismiss, I must ignore external facts not found in Re-Box's counterclaim. *See Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998). It is well accepted that "[d]ocuments that a defendant attaches to a Rule 12(b)(6) motion to dismiss may only be considered if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Northwestern*, 2003 U.S. Dist. LEXIS 17874, at *3. Therefore, accepting all of Re-Box's well-pleaded factual allegations as true, *see Cleveland*, 297 F.3d 569, dismissal of Count I is inappropriate because it may be possible for Re-Box to prove a set of facts in support of the claim, *see GATX Leasing Corp.*, 64 F.3d at 1114. Accordingly, Count I will not be dismissed and, because of that, the counterclaim in its entirety will not be dismissed on the basis of Re-Box's alleged waiver of any rights to a counterclaim. *See Schwaner v. Belvidere Med. Bldg. P'ship*, 508 N.E.2d 522, 529 (Ill. App. Ct. 1987); *Bell & Howell Fin. Servs. Co. v. St. Louis Pre-Sort, Inc.*, No. 97 C 6063, 1999 U.S. Dist. LEXIS 512, at **11-12 (N.D. Ill. Jan. 7, 1999).

Count II: Consumer Fraud

Count II of Re-Box's second amended counterclaim alleges that IFC violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"), 815 ILCS 502/2, by misrepresenting the equipment which it leased to Re-Box and by failing to tell Re-Box of IFC's prior litigation with Tenneco on Tenneco's prior lease of the equipment. IFC argues that Count II should be dismissed because: (1) any claim under the Consumer Fraud Act is barred by the statute of limitations; and (2) the information allegedly withheld from Re-Box was a matter of public record.

The Consumer Fraud Act provides that any action must commence "within three years after the cause of action accrued." 815 ILCS 505/10a(e). Claims accrue on the date when the plaintiff knows or reasonably should know of the injury, and knows or reasonably should know that the injury was wrongfully caused. *Midland Mgmt. Corp. v. Computer Consoles*, 837 F.Supp. 886 (N.D. Ill. 1993). IFC claims that the equipment which was the subject of the lease agreement between the parties was delivered to Re-Box on December 20, 2000, and that a representative of Re-Box discovered damage to the equipment and then notified Witowski of the damage that very same day. IFC claims that the three-year limitations began to accrue on this day, and then expired on December 20, 2003 – nearly four months before Re-Box filed its counterclaim. However, although damage was detected on December 20, 2000, Re-Box alleges that it was not until on or after March 15, 2001 that it discovered that in addition to the aforementioned damage, the equipment was also missing components essential to operation of the equipment. Moreover, it was not until well after March 15, 2001 that Re-Box discovered that IFC had sued Tenneco for Tenneco's hold-over of the equipment after the term of the

5

Tenneco lease. Nonetheless, in the best case scenario, March 15, 2001 is the earliest date at which to trigger the limitations period here, and because Re-Box filed its counterclaim on March 11, 2004, there is no statute of limitations problem.

IFC also argues that it should not be liable under the Consumer Fraud Act for a failure to disclose "other litigation involving the subject of the lease," since the litigation is a matter of public record. Re-Box, in fact, makes a much narrower claim – that IFC's failure to disclose its litigation with Tenneco concerning the equipment constitutes statutory fraud because Tenneco's legal duty to return all the equipment described in the lease was at issue in the prior case. Re-Box alleges that had it known of the prior litigation and the dispute of whether Tenneco had returned all the equipment described in the lease, Re-Box could have made inquiry of the completeness of the equipment. The non-disclosure is alleged to have aided the IFC/Witowski deception. IFC allegedly omitted a material fact applicable to its lease transaction with IFC, and "omission of any material fact . . . [is] hereby declared unlawful" under the Act. 815 ILCS 505/2. Because it is possible that Re-Box could prove a set of facts showing that this particular omission was material, dismissal of the claim on this basis is inappropriate. And while an omission of law appears to not be actionable under the Act, *see Notaro Homes, Inc. v. Chicago Title Ins. Co.*, 722 N.E.2d 208 (Ill. App. Ct. 1999); *Randels v. Best Real Estate*, 791 N.E.2d 553 (Ill. App. Ct. 1993), there is no clear prohibition of an omission of fact – even if public – being actionable.

Count III: Breach of Express Warranty

In Count III, Re-Box alleges that Witowski made and breached oral express warranties that: (1) the equipment, complete as it had been operating at Tenneco's mill, had been removed from Tenneco's mill in a professional manner; (2) the equipment had been crated and packed in a professional manner; (3) IFC would ship the equipment to Re-Box at a later date in a commercially reasonable and professional manner; and (4) Re-Box would not receive and accept the equipment until it was delivered to Re-Box's warehouse. IFC argues that this count should be dismissed because the lease agreement contains an integration clause stating that it and all the attachments and schedules constitute the entire agreement between the parties and that "[a]ny representations, promises or conditions not contained in the aforementioned documents or documents executed in connection herewith or therewith shall not be binding unless in writing and signed by duly authorized representatives of each party." Moreover, under the lease agreement, Re-Box agreed to waive all warranties, express or implied. IFC argues that because the warranty waivers were never modified in writing, Re-Box can hold no claims against IFC for breach of any express or implied warranties.

As an initial matter and as discussed above, if Re-Box prevails on its claim of fraudulent inducement in Count I, this would allow Re-Box to vitiate the lease agreement and render it voidable, thus voiding any waivers and integration clauses. Accordingly, Count III for breach of the oral express warranties cannot be dismissed on the basis of any waivers or integration clauses contained in an agreement which Re-Box may be able to render void.

In addition, although "[a] signed lease agreement that excludes modification . . . except by a signed writing may not be otherwise modified," 815 ILCS 5/2A-208(2), "an attempt at

7

modification or rescission . . . may operate as a waiver," 815 ILCS 5/2A-208(3). Re-Box has alleged that such 2A-208(3) modifications have occurred here. Re-Box has alleged that by attempting to orally modify the lease agreement by making the oral express warranties described above, IFC has waived strict compliance with the integration clause and/or any warranty waivers in the lease agreement. Accordingly, Count III cannot be dismissed because Re-Box may be able to prove a set of facts showing that IFC has waived strict adherence to the lease agreement, that IFC did indeed make oral express warranties, and that IFC subsequently breached these warranties.

Count IV: Breach of Contract

In Count IV, and in the alternative to Counts I-III, Re-Box alleges that IFC breached the delivery conditions of a late delivery agreement with Re-Box. Re-Box alleges that the late delivery agreement is a separate and distinct contract from Re-Box's lease with IFC. The terms of the agreement are that Re-Box would take delivery of the equipment months after making initial lease payments, and IFC, at its expense, would crate, store, and ship the equipment to Re-Box in a commercially reasonable and professional manner. Re-Box alleges that IFC breached the agreement by failing to crate, store or ship the equipment in a commercially reasonable and professional manner. Re-Box alleges that it complied with all of its responsibilities under the agreement, and it has been damages as a result of IFC's breach.

IFC claims that Count IV must be dismissed because it is an attempt to enforce an oral lease agreement between the parties for an amount more than $1,000, but that under the statute of frauds, such leases must be in writing. 810 ILCS 5/2A-102. IFC claims that because this alleged

8

agreement is not in writing, Count IV fails to state a claim upon which relief may be granted. However, the alleged late delivery agreement between IFC and Re-Box did not create a lease. A lease is a "transfer of the right to possession and use of the goods for a term in return for consideration." 810 ILCS 5/2A-103(j). The late delivery agreement addresses only delivery of the equipment, and not the transfer of the right to possess and use the equipment for a specific turn in return for an agreed upon rent. Since the late delivery agreement does not create a lease therefore, it is not subject to the statute of frauds.

In addition, IFC belatedly argues in its reply that even if not considered a lease in violation of the statute of frauds, Count IV should nonetheless be dismissed because it is another oral agreement modifying the lease agreement in violation of the agreement's integration clause barring oral modifications. Once again, however, if Re-Box prevails on its claim of fraudulent inducement in Count I, Re-Box could render the agreement's integration clause voidable. Accordingly, Count IV cannot be dismissed.

For the reasons above, IFC and Witowski's Motion to Dismiss Defendant's Second Amended Counterclaim Pursuant to Rule 12(b)(6) is DENIED.

ENTER:

_____
James B. Zagel
United States District Judge

DATE: 10 \_\_\_ 2004

9